# EXHIBIT   C

1

Name  MIGUEL MOLINA

Address  P.O. BOX 705 WA-324

CTF-North Facility

Soledad, Ca. 93960

CDC or ID Number  D-21051

MC-275

**FILED**

APR 1 4 2003

SAN LUIS OBISPO SUPERIOR COURT

BY _____

Karen Spleak, Deputy Clerk

Superior Court of California

County of San Luis Obispo, Ca.

(Court)

MIGUEL MOLINA

Petitioner

vs.

GRAY DAVIS & JIM HAMLET

Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. CR13298 (HC-1)

(To be supplied by the Clerk of the Court)

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
C-275 (Rev. January 1, 1999)
Optional Form

PETITION FOR WRIT OF HABEAS CORPUS

WEST GROUP

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

2

This petition concerns:

☐ A conviction                    ☐ Parole

☐ A sentence                      ☐ Credits

☐ Jail or prison conditions       ☐ Prison discipline

☒ Other (specify): Governors Reviw Pursuant to P.C. 3041.2

1. Your name:    MIGUEL MOLINA

2. Where are you incarcerated?    CTF-North Soledad, Ca.

3. Why are you in custody?    ☒ Criminal Conviction    ☐ Civil Commitment

   Answer subdivisions a. through i. to the best of your ability.

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Murder 2nd

   b. Penal or other code sections:    P.C. 187

   c. Name and location of sentencing or committing court:    San Luis Obispo, Ca.

   d. Case number:    13298

   e. Date convicted or committed:

   f. Date sentenced:    12/18/85

   g. Length of sentence:    15-Life

   h. When do you expect to be released?    Life Prisoner

   i. Were you represented by counsel in the trial court?    ☒ Yes.    ☐ No.  If yes, state the attorney's name and address:

      PATRICIA NEMEC ASHBAUGH

4. What was the LAST plea you entered? (check one)

   ☐ Not guilty   ☒ Guilty   ☐ Nolo Contendere   ☐ Other:

5. If you pleaded not guilty, what kind of trial did you have?

   ☐ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

**PETITION FOR WRIT OF HABEAS CORPUS**

6.  GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

> See attached Petition

_____

_____

_____

a.  Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

> See attached Petition

_____

_____

_____

_____

_____

_____

_____

_____

_____

b.  Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

> See attached Petition

_____

_____

_____

7. Ground 2 or Ground _____ (if applicable):

See attached Petition

_____

_____

_____

_____

a. Supporting facts:

    See attached Petition

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority:

    See attached Petition

_____

_____

_____

_____

_____

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☒ No.    If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"): _____

   b. Result: _____    c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised:  (1) _____

       (2) _____

       (3) _____

   f. Were you represented by counsel on appeal? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

9. Did you seek review in the California Supreme Court? ☐ Yes. ☒ No.    If yes, give the following information:

   a. Result: _____    b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised:  (1) _____

       (2) _____

       (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

_____

_____

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

      There is no administrative appeal to challenge a grant of Parole by

      The Board of Prison Terms reversed by the Governor.

_____

_____

_____

_____

_____

_____

_____

   b. Did you seek the highest level of administrative review available? ☒ Yes. ☐ No.
     *Attach documents that show you have exhausted your administrative remedies.*

6

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1) Name of court: _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
    No Delay

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:     04-08-03     ▶ _Miguel Mal_
                                  (SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]     **PETITION FOR WRIT OF HABEAS CORPUS**     Page six of six

7

**APPENDIX A**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN LUIS OBISPO**

Miguel Molina,                                      )
                                                    )
    Petitioner                                  )Case No.
                                                    )
    VS.                                         )Pro Se
                                                    )
Gray Davis, Governor of California,                 )
                                                    )
Jim Hamlet, Warden Correctional                     )
                                                    )
Training Facility, Soledad, California              )
                                                    )
    Respondents,                                )
_____

## I INTRODUCTION

Petitioner, Miguel Molina D-21051 is a state prisoner who seeks review of his habeas petition. On September 25, 2002, Petitioner was granted parole by the Board of Prison Terms. The date was approved by the Review Board and sent to the Governor for additional review. On February 21, 2003, Governor Gray Davis acting pursuant to his authority under Article V Section 8 of the California Constitution and Penal Code 3041.2 has elected

1.

8

to reverse the decision of the granting panel and deny parole for the Petitioner in this case.

## II PARTIES

Petitioner Miguel Molina is a State Prisoner presently incarcerated at the Correctional Training Facility (CTF) in Soledad, California. Respondent Gray Davis is the Governor of the State of California. Respondent Jim Hamlet is the Warden of the Correctional Training Facility (CTF) at Soledad, California.

## III STATEMENT OF FACTS

On September 25, 2002, Petitioner Miguel Molina, D-21051 appeared before the Board of Prison Terms for his subsequent parole consideration hearing. His Minimum Elegible Parole Date (MEPD) was July 31, 1994. He was received by the Department of corrections (CDC) January 3, 1986 from the County of San Luis Obispo. The offense was murder second, Case Number 13298 and the term would be 15 years to life. The panel reviewed all information and has concluded that the Petitioner is suitable for parole and would not pose an unreasonable risk of danger to society or threat to public safety if released from prison pursuant to Penal Code section 3041(a),(b). The panel provided a detailed account of the specific reasons they found in determining that the Petitioner is suitable for parole and also why he no longer represents a

2.

threat to public safety. (See 2002 Hearing Transcripts marked
as **EXHIBIT-A)** Equally important is the fact that this hearing
in particular was unopposed by both law enforcement agencies and
the Office of the District Attorney from the County of San Luis
Obispo. An unlike the Governor, the hearing panel relied
specifically on Penal Code Section 3041(a),(b), the California
Code of Regulations Title 15 Division 2, specifically CCR 2402
[Determination of Suitability]. The panel found that the prisoner
does not represent a threat to himself or others. The panel has
specifically noted that the prisoner has enhanced his ability
to function within the law upon his release. The criteria for
this determination is cited in the Title 15

### CALIFORNIA CODE OF REGULATIONS DIVISION 3

### Title 15 CCR 3335. Article 7. Administration Segregation

(a) When an inmate's presence in an institution's general
population presents an immediate threat to the safety of the inmate
or others, endangers institution security or jeopardizes the
integrity of an investigation of alleged serious misconduct of
criminal activity, the inmate "shall" be immediately removed from
the general population and be placed in administrative segregation.
Administrative segregation may be accomplished by confinement
in a designated unit, or in an emergency, to any single cell unit

3.

10

capable of providing secure segregation.

Title 15 CCR 3336 (a) The reason for ordering an inmate's placement in administrative segregation will be clearly documented on a CDC-114-D (Order and Hearing on Segregation Housing) by the official ordering the action at the time the action is taken.

**CCR 3341.5 Segregated Program Housing Unit**

(c) Security Housing Unit (SHU). An inmate whose conduct endangers the safety of others or the security of the institution "shall" be housed in a (SHU).

The guidelines found in the Title 15 Division Three are published by the California Department of Corrections (CDC). They serve to clarify and give meaning to an inmate's institutional expectations under the Director of Corrections, while he is incarcerated.

The fact that the Board of Prison Terms has found the Petitioner suitable for parole and the Review Panel has approved the decision to grant parole is indicative of the relevant factors used by the panel for determining when a prisoner can safely be returned to the community, pursuant to the California Penal Code Section 3041(a), (b), title 15, Division Two, Three. (See 2002 hearing transcript marked as **EXHIBIT-A**). At page 43 of the hearing transcript, presiding Commissioner Jones Moore gives meaning to the decision to grant parole and apparently the Review Panel has agreed along with law enforcement agencies, and the District

4.

Attorney for the County of San Luis Obispo as they have elected not to oppose parole for the petitioner in this case. Just briefly to sum up the decision to parole, the Commissioner notes the following, he states the Prisoner has no juvenile record, no disciplinary while incarcerated. He has enhanced his ability to function within the law upon release. Among other factors the Commissioner specifically notes that the victim, Ruben Morales at least partially contributed to the events. This is covered in more detail by the petitioner's attorney, Mr. Bill Schmidt at P. 36-41 of the hearing transcript (See **EXHIBIT-A**). Mr. Schmidt makes a reference to the Sentencing Transcripts at P. 3-4, 8-9 and also the Preliminary Hearing Transcript at P. 151-152. Mr. Schmidt indicates that the victim Ruben Morales pulled a knife on Petitioner, Mr. Molina. The victim then pursued Mr. Molina in a vehicle until it became impossible for him to continue the pursuit. The record also indicates that the victim, Mr. Morales came to Mr. Molina's residence. An eyewitness, Tony Romero, indicated that Mr. Morales wanted to fight Mr. Molina and that he wanted to cut him. The Board of Prison Terms has clearly articulated and laid out the particular reasons why they have determinedthat the Petitioner in this case is suitable and would not represent a threat to society if released from prison, include the fact that he was in fact attempting to protect himself at the time of the offense and that his offense in particular has not reached the level of egregiousness when compared to other similar offenses of second degree murder.

5.

### III STATEMENT OF FACTS CONTINUED

On February 21, 2003, Governor Gray Davis acting on his authority pursuant to Penal Code Section 3041.2 has reversed the decision of the Board of Prison Terms to grant of parole. The Governor has mailed a copy of his decision to review and reverse the decision of the Board of Prison Terms pursuant to Penal Code Section 3041.2. The Petitioner has marked this letter from the Office of the Governor as **EXHIBIT-B** and has provided a copy for the court.

In the Governor's review he asserts contrary to the findings of the Board of Prison Terms, he states: However, "In my view", these favorable factors are outweighed by the factors that show that Mr. Molina would pose an unreasonable risk of danger to society if released at this time. (Quoting verbatim From Page 3, last paragraph of the Governor's letter), [See **EXHIBIT-B**].

The Governor acknowledges that Petitioner, Mr. Molina was indeed threatened by the victim Mr. Morales with a knife. He also goes on to state that Mr. Molina has <u>served eighteen years</u> for his offense and has demonstrated remorse for his offense, for the pain he has caused the family of Mr. Morales. Additionally, the Governor adds that the victim Mr. Morales was shot 15-18 times and that it was Mr. Molina who threatened Mr. Morales. The Governor changes his statement and now claims that petitioner Mr. Molina demonstrates a lack of remorse, completely and contradictious of the statements he already made. The Governor findings are

6.

inconsistent with the record and the findings with of the Board of Prison Terms. There is nothing in the record to support the Governor's decision to reverse, nothing but his personal views. His decision is entirely without foundation and lacks the "some evidence" cited (**In re Powell** 45 Cal. 3d 894).

## IV CONTENTIONS

1. Petitioner, Mr. Molina has a liberty interest in parole.

2. The Governor's decision to reverse a grant of parole is not supported by the evidence and is therefore arbitrary and capricious, violating Petitoner's right to due process under the State and Federal Constitutions.

3. The decision by the Governor to reverse Mr. Molina grant of parole must be for "good cause" as defined in CCR Title 15 2000(b)(49).

4. Article V Section8 (b) does not grant a Governor unfettered discretion over parole matters, but rather explicitly requires parole decisions to be based upon the same factors that the Board of Prison Terms is required to consider. Proposition 89, Section 8 Sub.(b) is unconstitutional on its face because the Governor has no guidelines and criteria for review with individualized consideration. The Petitioner is entitled to receive a copy of the same materials provided to the Governor by the parole authority in order to challenge this additional level of review imposed upon prisoners by Proposition 89 Section 8 sub. (b).

7.

14

### IV MEMORANDUM OF POINTS AND AUTHORITY

Petitioner has a liberty interest in and an expectation of parole (**In re Rosenkrantz III, Supra,** 116 Cal. Rptr. 2d 69, 80-81 citing **In re Ramirez, Supra** 94 Cal. App. 4th 549, 564-568, 114 Cal. Rptr. 2d at 397; **Greenholtz v. Nebraska Penal Inmates** (1979) 442 U.S. 1, 12; **Board of Pardons v Allen** (1987) 482 U.S. 369, 371-379; **Sandin v. Conner** (1975) 515 U.S. 472). In that liberty interest in parole, Petitioner has an expectation to have his term proportionally fixed with a "balance between the gravity of the offense, the time the inmate has served, and the sentence prescribed by law for the commitment offense." (**In re Ramirez, Supra,** 114 CAl. Rptr. 2d at 396).

California state law provides a prisoner with a right to a fair parole hearing including all levels of review. The process of review should be without bias and meet at least the minimum due process required by statute. (See for example, **People v Ramirez** (1979), 25 Cal. 3d 260), holding "when an individual is subject to deprivatory govermental action, he always has a due process liberty interest both in fair and unprejudicial decision making and being treated with respect and dignity. The California Constitution, Article 1 and 17 and the 14th Amendment to the United States Constitution guarantees a person will not be deprived of his liberty without the protection of due process of the law. Minimum, due process requires a parole decision be based on verified facts and accurate knowledge of the record (**Morrisey**

8.

**v Brewer** (1971) 408 U.S. 47, 484).

Recently the California Supreme Court set the standard for the Governor's review for indeterminate inmates pursuant to Penal Code Section 3041.2 [See **In re Rosenkrantz** (2002) WL 31802385 (Cal.); 29 Cal. 4th 616]. An in another recent case, the United States Court of Appeals outlined the standard for review for the Board of Prison Terms (See **Mc Quillion v Duncan** (2002) DJDAR 11153 9th Cir. (2002) 306 F. 3d.

The Mc Quillion court made it clear. The court held that under clearly established Supreme court precedent, the parole scheme in California under which Mc Quillion was given his parole date in 1979 gives rise to a constitutionally protected liberty interest. The process that is due before a prisoner can be deprived of such an interest is a showing that there is "some evidence" in the record to support a later rescission of that date. Because the board's grounds for its later rescission reflect nothing more than a disagreement with the ultimate determination reached by the earlier granting panel, the "some evidence" standard has not been met. Accordingly we reversed.

[Mc Quillion at P. 11154] California law presumes that each piece of evidence presented to the granting panel was considered by it. [See **In re Caswell**, 92 Cal. App. 4th 1017, 1031 (Cal. Ct. App. 2002)]. The noted "a procedural due process claim has two distinct elements: 1) a deprivation of a constitutionally protected liberty of property interest and, 2) a denial of adequate procedural protections. (**Brewster v. Board of Educ. of Lynwood**

**9.**

**Unifed Sch. Dist.** 149 F. 3d 971, 982 (9th Cir. 1988) We therefore, hold that "clearly established federal law as determined by the Supreme Court of the United States" provides that California prisoners like Mc Quillion have a cognizable liberty interest in release on parole. The Governor in this case must support his decision to reverse the decision of the Board of Prison Terms with something more than "In my view." He must present "some evidence" and clearly establish "good cause" for his decision and it must be supported by the record using the material forwarded to him by the board.

The Governor when reviewing grants of parole is being held to the same regulations and guidelines as the board **(Johnson v Gomez, Supra,** 92 F. 3d at 967; **In re Arafiles, Supra,** 6 Cal. App. 4th at 1477), that would include the same regulations and guidelines.

Moreover, the weight of evidence for even a disciplinary proceeding to find guilt must be by a preponderance of the evidence [15 CCR 3320(1)]. It only stands to reason that if a disciplinary violation must be proved by a preponderance of evidence, then parole decision that is tantamount to a sentencing decision must also be by a preponderance of the evidence; anything less would lead to absurd consequences. The Governor merely disagrees with the granting panel and presents his view of the case but submits no evidence to support his view.

[Mc Quillion at P. 11156] The court noted, the rescission panel may not find "good cause" based on its own differing

**10.**

assessment of facts that were thoroughly considered at the time of the grant.

In Caswell, the Caswell court stressed that "a" rescission may not be upheld merely because the board has mouth words that have held constitute 'cause' for rescission. There must also be an adequate factual underpinning for the board's determination of cause. 92 Cal. App. 4th at 1027. When the basis for rescission [is] not new evidence, but a purportedly inadequate consideration of evidence by the granting board, Id, at 1028, the Caswell court held, the grounds for rescission must reflect more than a mere disagreement with the ultimate determination reached by the ["granting panel"]. Under Article V Section 8 (b), and Penal Code Section 3041.2 the Governor is subject to the same standards the court held in Mc Quillion and Caswell. The Governor therefore cannot simply mouth words, he must like in Caswell demonstrate that his decision to reverse the board's decision to grant parole to the Petitioner was more than just "his personal view." He must demonstrate that there was a preponderance of evidence and an actual and factual adequate factual underpinning for his determination and not just merely a disagreement with the granting panel.

[Caswell 92 CAl. App. 4th at 1029] the court held that in a review of a rescission of parole based on the inadequate consideration of evidence, "the proper focus is on the finding and conclusions that were central to the original panel's ultimate decision to grant parole." Id, only when these findings or

**11.**

18

conclusions cannot be reconciled with the evidence before the granting panel, or when the granting panel misstates facts or explicitly decline to consider information germane to the [particular suitability factor] will there exist "some evidence" of panel's failure to adequately consider the evidence, thereby justifying rescission of the parole release date on the grounds that fundamental errors occurred, resulting in the improvident granting of parole date. Id.

In order for the Governor to establish "good cause" and justify his decision in the case of the Petitioner he must follow the established guidelines in Articls V, Section 8 Subdivision (b) of the California Constitution which provides: No decision of the parole authority of this state with respect to the granting, denial, revocation or suspension of parole of a person sentenced to an indeterminate term upon conviction of murder shall become effective for a period of 30 days, during which the Governor may review the decision "subject to procedures" provided by statute. The Governor may only affirm, modify or reverse the decision of the parole authority on the basis of the same factors which parole authority is required to consider.

Penal Code Section 3041.2 Subdivision (a) provides in part: The Governor when reviewing the parole authorities decision pursuant to Subdivision (b) of Section 8 of Article V of the Constitution, "shall"" review materials provided by the parole authority.

California Code of regulations title 15 Division 2 CCR 2000

**12.**

has established that there must be "good cause" for all substantive decisions and define "good cause" as [a] finding by the board based upon a preponderance of the evidence that there is a factual basis and good reason for the decision made [emphasis added 15 CCR 2000 (b) (49) good cause]. Title 15, Division 2, CCR 2254 provides that the record of the hearing shall include or incorporate by reference the [e]vidence considered, the evidence relied upon, and the findings of the hearing panel with supporting reasons. The Governor has drawn several conclusions without any support in the record to establish his view that Petitioner would be a danger to society. There is no indication that the Governor relied upon any part of the record or applied the same criteria as the granting panel in the review process except his personal view which does not constitute facts. Findings made by the Governor do not in and of themselves legally constitute the necessary evidence, on which a decision to reverse parole can be legally made. (See **Rosenkrantz, Supra,** PP 426-427). The Governor must provide facts to support his decision. Also, the Governor must weigh the gravity of the Petitioner's offense against the gravity of other offenses of the same class, and take into account the term to which the Petitioner was sentenced. Petitioner has been eligible for parole since July 31, 1994. (See **Ramirez, Supra,** 94 Cal. App. 4th at P. 570).

/

/

/

**13.**

## V CONCLUSION

The legislature has decreed that unless the release of a prisoner convicted of murder possess a threat to public safety, such a person should not be paroled. In this case there was no evidence to support the Governor's finding. On the contrary, the overwhelming evidence in the record clearly demonstrates that the Petitioner has served the appropriate amount of time to satisfy the punishment for his offense of murder second provided in the regulations of the California Code of Regulations Title 15, and Penal code Section 3041 (a), (b). Prison officials have never considered the Petitioner to represent a danger to himself or others in his entire time of incarceration. The Governor has reversed Petitioner's grant of parole in violation of the law as set forth **In re Ramirez, Supra,** 94 Cal. App. 4th 549 and **In re Rosenkrantz III, Supra,** 95 Cal. App. 4th 549 and the decision being contrary to the facts.

## VI PRAYER FOR RELIEF

1. The appropriate relief is to direct the Governor to issue a decision within (10) days approving the decision of the granting panel.

2. Grant Petitioner habeas petition.

3. Appoint counsel for Petitioner.

4. Issue Order to Show Cause.

14.

21

5. And any other relief this court deems appropriate.

## VII VERIFICATION

I am the Petitioner in this action. All facts in the above document, not otherwise supported by citation to the record, exhibits, or other documents are true of my own personal knowledge. I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Correctional Training Facility (CTF), Soledad, California.

Date: _04-08-03_                    Respectfully submitted,


Miguel Molina

Pro Se

15.