# EXHIBIT   F

ORIGINAL

MC-275

Name   **Miguel Molina**

Address   **P.O. Box 689**

**Soledad, CA 93960-0689**

**Correctional Training Facility-East Dorm**

CDC or ID Number   **D-21051**

B 170538 ⁶/ₐ/ᴅ

CALIFORNIA COURTS OF APPEAL

SECOND APPELLATE DISTRICT

(Court)

COURT OF APPEAL-SECOND DIST.

F I L E D

APR 1 3 2007

**JOSEPH A. LANE, Clerk**

**JAMES TERRY, Deputy Clerk**

| | |
|---|---|
| **MIGUEL MOLINA** | |
| Petitioner | |
| vs. | |
| **BEN CURRY Warden(A) et al.** | |
| Respondent | |

PETITION FOR WRIT OF HABEAS CORPUS

No. _____ B198185

*(To be supplied by the Clerk of the Court)*

X-Ref: B170538 (Peo's Appeal/REV/6-4-P)

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

**This petition concerns:**

| | | | |
|---|---|---|---|
| ☐ A conviction | | ☒ Parole | |
| ☐ A sentence | | ☐ Credits | |
| ☐ Jail or prison conditions | | ☐ Prison discipline | |

☒ Other *(specify)*:   Review of Governor's denial of parole after current court decisions.

1. Your name:   Miguel Molina

2. Where are you incarcerated?   Correctional Training Facility - East Dormitory

3. Why are you in custody?   ☒ Criminal Conviction   ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Second Degree Murder

   b. Penal or other code sections:   California Penal Code section 187

   c. Name and location of sentencing or committing court:   Superior Court of California,- County of San Luis Obispo

   d. Case number:   CR 13298

   e. Date convicted or committed:   May 18, 1985

   f. Date sentenced:   December 18, 1985

   g. Length of sentence:   15 to Life

   h. When do you expect to be released?   Should have been released on August 18, 1997

   i. Were you represented by counsel in the trial court?   ☒ Yes.   ☐ No.   If yes, state the attorney's name and address:

      Patricia Nemec Ashbaugh

      Address unknown to petitioner at this time.

4. What was the LAST plea you entered? *(check one)*

   ☒ Not guilty   ☐ Guilty   ☐ Nolo Contendere   ☐ Other:

5. If you pleaded not guilty, what kind of trial did you have?

   ☒ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

INTRODUCTION

Petitioner, Miguel Molina, was found suitable
held by the Board of Prison Terms (Board) on Septem'
release on parole by August 18, 1997 (Exhibit I) (E
Separately).  This parole release was reversed by t!
Davis, on February 21, 2003 (Exhibit II).

Specifically, the Board found:  Witness [Romero
had stated he was going to kill the victim, was fou:
preliminary hearing (Ex I, pg 9).

The Board's record also shows:  On December 5,
shot Ruben Morales.  Mr. Morales and Mr. Molina had
who knew both of them indicated that one month befo:
confrontation between the two where the victim pull
That can be found in the sentencing transcripts, pa;
nine, and the preliminary hearing transcripts 151 t
but was pursued by Mr. Morales in a vehicle until i
to continue the pursuit.  On December 5, 1984, the
was a fight at work between the two.  Then the vict:
residence and accosted him, and that's when he empt:
victim (Ex I, pg 37).

The Board's decision (Ex I, pgs 43 - 47) state:
reviewed all information received from the public a:
circumstances in concluding that the prisoner is su:
not pose an unreasonable risk of danger to society
released from prison.  Has no juvenile record, has ;
115's in his entirety of incarceration time, enhanc

INTRODUCTION

Petitioner, Miguel Molina, was found suitable for parole during his hearing held by the Board of Prison Terms (Board) on September 25, 2002, and granted release on parole by August 18, 1997 (Exhibit I) (Exhibits Bound and Submitted Separately). This parole release was reversed by then California Governor Gray Davis, on February 21, 2003 (Exhibit II).

Specifically, the Board found: Witness [Romero] testimony that petitioner had stated he was going to kill the victim, was found not to be true at the preliminary hearing (Ex I, pg 9).

The Board's record also shows: On December 5, 1984, Mr. Molina fatally shot Ruben Morales. Mr. Morales and Mr. Molina had an ongoing feud. Witnesses who knew both of them indicated that one month before the shooting there was a confrontation between the two where the victim pulled the knife on Mr. Molina. That can be found in the sentencing transcripts, pages three and four, eight, nine, and the preliminary hearing transcripts 151 to 152. Mr. Molina ran away, but was pursued by Mr. Morales in a vehicle until it became impossible for him to continue the pursuit. On December 5, 1984, the day of the shooting, there was a fight at work between the two. Then the victim came to Mr. Molina's residence and accosted him, and that's when he emptied his weapon into the victim (Ex I, pg 37).

The Board's decision (Ex I, pgs 43 - 47) states in part: The Panel has reviewed all information received from the public and relied on the following circumstances in concluding that the prisoner is suitable for parole and would not pose an unreasonable risk of danger to society or threat to public safety if released from prison. Has no juvenile record, has a stable social history, no 115's in his entirety of incarceration time, enhanced ability to function within

the law upon release, got a GED, has beneficial sel

trade, marketable job skills, positive work reports

of significant stress in his life in that the victi

that he threaten petitioner with a knife prior to t

growth, realistic parole plans in Mexico, close fam

understands the nature and magnitude of the offense

a desire to be a good citizenship, psychologist rep

and alcohol abuse in long term remission.  (Ex I, p

The Board then found petitioner's crime fell s

Code of Regulations (CCR 15) §2403 (c), second degr

Panel found category 2B to be the appropriate one, :

months then awarded prison conduct credits of 68 mo

total term to serve at 148 months [216 months – 68 i

46), the statutory legislatively approved prescribe

magnitude of the offense and its threat to public s

Board finds an offense to fit within the matrix, th

the minimum necessary to sustain the conviction.

California law requires the Board to set a par

here, the crime falls within this matrix, Californi

petitioner met or exceeded all suitability requirem

completed their mandated duty, found petitioner sui

release.

Petitioner having a liberty interest in parole

Irons v. Carey, ___F.3d   , 2007 U.S. App. Lexis

Mar. 6, 2007); Sass v. Cal. Bd. of Prison Terms, 4(

Cir. 2006), has served his minimum term, and has be

by the Board, and as will be explained, no evidence

the law upon release, got a GED, has beneficial self-help, therapy, vocational trade, marketable job skills, positive work reports, crime committed as a result of significant stress in his life in that the victim played some role in this in that he threaten petitioner with a knife prior to the event, maturation and growth, realistic parole plans in Mexico, close family ties, remorse, understands the nature and magnitude of the offense, accepts responsibility, has a desire to be a good citizenship, psychologist report supportive of release, and alcohol abuse in long term remission. (Ex I, pgs 43-45).

The Board then found petitioner's crime fell squarely within the California Code of Regulations (CCR 15) §2403 (c), second degree murder matrix table, the Panel found category 2B to be the appropriate one, and set the total term at 216 months then awarded prison conduct credits of 68 months, setting petitioner's total term to serve at 148 months [216 months - 68 months = 148 months] (Ex I pg 46), the statutory legislatively approved prescribed term for the gravity and magnitude of the offense and its threat to public safety. Obviously when the Board finds an offense to fit within the matrix, the offense cannot be beyond the minimum necessary to sustain the conviction.

California law requires the Board to set a parole release date, when as here, the crime falls within this matrix, California Penal Code (PC) 3041(a) and petitioner met or exceeded all suitability requirements, the Board lawfully completed their mandated duty, found petitioner suitable and granted his parole release.

Petitioner having a liberty interest in parole protected by due process, Irons v. Carey, ___F.3d    , 2007 U.S. App. Lexis 5198, at *7 (9th Cir. Mar. 6, 2007); Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006), has served his minimum term, and has been found suitable for parole by the Board, and as will be explained, no evidence supports the reasons given

by the Governor's reversal of the Board's decision

be reversed in light of the recent rulings in In re

Cal.App.4th 573 (review denied); In re Lee, (2006)

did not request review) and In re Elkins, (2006) 14

denied).


### STATEMENT OF CASE

Petitioner pled guilty to second degree murder

indeterminate prison term of 15 to life, with a min

July 31st of 1994 (Ex I, pg 1).

On September 25, 2002, the Board conducted a p

and a majority found petitioner suitable for parole

term of 148 months (Id. pg 46) establishing a parol

1997. However, on February 21, 2003 the then Gover

reviewed the Board's decision and reversed it, find

suitable for parole, citing: the probation officer'

impeached witness statements) that petitioner threa

that Mr. Morales was watching television when shot,

lack of remorse by not turning himself in to author

Correctional Counselor evaluator's conclusion that

a moderate degree of risk, lack of parole plans in

Thereafter, petitioner challenged that decisio

Writ of Habeas Corpus in the San Luis Obispo County

no. CR13298. On July 31, 2003, the Governor filed

Cause along with Points and Authorities in Support.

petitioner filed his Denial along with Points and A

by the Governor's reversal of the Board's decision (Ex II) a decision which must
be reversed in light of the recent rulings in In re Scott, (2005) 133
Cal.App.4th 573 (review denied); In re Lee, (2006) 143 Cal.App.4th 1400 (State
did not request review) and In re Elkins, (2006) 144 Cal.App.4th 475 (review
denied).


## STATEMENT OF CASE

Petitioner pled guilty to second degree murder and sentenced to an
indeterminate prison term of 15 to life, with a minimum eligible parole date of
July 31st of 1994 (Ex I, pg 1).

On September 25, 2002, the Board conducted a parole consideration hearing
and a majority found petitioner suitable for parole (Id. pgs 43-47) and set a
term of 148 months (Id. pg 46) establishing a parole release date of August 18,
1997.  However, on February 21, 2003 the then Governor Gray Davis (the Governor)
reviewed the Board's decision and reversed it, finding petitioner was not
suitable for parole, citing: the probation officer's report (which cites the
impeached witness statements) that petitioner threatened to kill Mr. Morales,
that Mr. Morales was watching television when shot, that petitioner showed a
lack of remorse by not turning himself in to authorities for almost five months,
Correctional Counselor evaluator's conclusion that petitioner would likely pose
a moderate degree of risk, lack of parole plans in California (Ex II).

Thereafter, petitioner challenged that decision by filing a Petition for
Writ of Habeas Corpus in the San Luis Obispo County Superior Court case
no. CR13298.  On July 31, 2003, the Governor filed his Return to Order to Show
Cause along with Points and Authorities in Support.  On August 6, 2003,
petitioner filed his Denial along with Points and Authorities in Support (Ex

III).  The Superior Court subsequently issued its order and findings that an

evidentiary was not necessary and further declaring that the Court had reviewed

the petition, the return, the denial and the relevant portions of the record in

chambers.  The Superior Court then stated that for all the reasons cited in

petitioner's memorandum of points and authorities in support of denial to return

filed August 6, 2003, granted the petition.

The Governor appealed from the trial court's order challenging the findings

by the Court, Appellant's Opening Brief was filed on February 27, 2004, (Ex IV),

Respondent's Brief was filed March 9, 2004, (Ex V), and Appellant's Reply Brief

was filed on March 29, 2004 (Ex VI).

The California Courts of Appeal, Second Appellate District, reversed the

Trial Courts Order on July 22, 2004 case no. B170538.

The opinion by the appellate court was made prior to the rulings which

clarified the application of In re Rosenkrantz, (2002) 29 Cal.4th 616 which the

court exclusively relied to support the Governor's decision.

Scott, (supra, infra) Elkins, (supra, infra) and Lee, (supra, infra)

decided in this district held close judicial scrutiny is warranted of parole

denial based on the offense, when the offense occurred years ago, and the test

is not whether some evidence supports the reasons cited, but whether some

evidence indicates a parolee's release unreasonably endangers public safety, and

when no evidence supports a decision, the proper remedy is release, remand for a

new decision being futile.

Petitioner has been in continued incarceration for over 16 years, has

exceeded his minimum term of 15 years, arrested May 18, 1985 + 15 years =

minimum term reached on May 18, 2000, and no evidence in his record would

support any decision that he poses a risk to public safety when released on

parole.

2 d

DISCUSSIONAL HISTORY

Summerizing the California Supreme Court's findings in In re Dannenberg (Infra).

For decades before 1977, California employed an "indeterminate" sentencing system (ISL) for felonies. An inmate's actual period of incarceration within this range was under the exclusive control of the parole authority, which focused primarily, not on the appropriate punishment for the offense, but on the offender's progress toward rehabilitation. The Determinate Sentencing Law (DSL) adopted in 1976, largely abandoned the (ISL) system with the Legislature declaring that "the purpose of imprisonment for crime is punishment". Under pre-1977 ISL and post-1977 ISL-DSL Laws, life inmates actual confinement periods within the statutory range are decided by an executive parole agency, an arm of the California Department of Correction (and Rehabilitations)(CDCR).

This parole agency meets with a life inmate one year prior to his minimum eligible parole date (an actual release date) and "shall normally set a parole release date" in a manner that will provide uniform terms for offenses of similar gravity and magnitude, the release date also must "comply with the sentencing rules of the Judicial Council and the [Board of Parole Hearings] Board must "establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime and other factors in mitigation or aggravation of the crime (California Penal Code 3041(a)).

In response to these requirements, the Board adopted regulations covering the various categories of ISL inmates (California Code of Regulations, Title 15 (CCR 15) § 2400 et seq.). These regulations specify that the inmate's release date is to be set by calculating a "base term". The first step in the calculation is to determine where the particular murder fits, in terms of its relative seriousness, on a bi-axial "matrix" of factual variables. (Ibid.) The matrix specifies lower, middle, and upper "base terms" for each matrix category (Id., 2403(c).). Once the proper matrix category is selected, the Board must

2 e

impose the middle term unless it finds aggravating circumstances not accounted for in the matrix (Id. 2403(a).).

However, PC 3041(b) provides that a parole release date shall be set, "unless" the Board determines that the inmate is presently unsuitable for the fixing of a parole date, i.e., that "the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual.

The California Legislature clearly intended to apply DSL principles to life-maximum inmates [citation].  Thus, the Board "shall" set a "uniform' parole release date "unless," the Board concludes that a longer period of confinement is warranted for "this individual" by public safety concerns arising from the circumstances of the prisoner's commitment offense or criminal history.

Under the pre-1977 sentencing regime, almost all convicted felons received ISL terms, with short minimums and life maximums.  Under this system the parole authority was required to set actual maximum terms for all inmates, proportionate to their individual culpability, this requirement was derived from former PC 3020.  Thus, an inmate who made good progress in prison could be granted parole before the end of his maximum term, as fixed by the Adult Authority, but in any event must be released upon expiration of that maximum term [citation]. Also, under pre-1977 system, parole dates for ISL inmates based "primarily upon the nature of the principle commitment offense, supplemented by mathematical increments for additional precommitment offenses" violated the duty to consider all factors relevant to the inmate's suitability for parole.

Adoption of the DSL, with its fixed statutory terms followed by mandatory parole, combined the term-setting and parole functions.  In this regard, its been noted that the nature of the offense alone can constitute a sufficient basis for denying parole [citation].  However, sole reliance on the offense

2 f

might violate PC 3041(a) where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense.  Therefore, "When the Board bases unsuitability on the circumstances of the commitment offense, it must cite "some evidence" of aggravating facts beyond the minimum elements of that offense [citation] in other words evidence the inmate committed a greater degree of the offense that his or her conviction evidences, i.e. the offense is "particularly egregious" defined as especially heinous, atrocious or cruel manner.  And, no prisoner can be held for a period grossly disproportionate to his or her individual culpability for the commitment offense.

[Above Summary taken from In re Dannenberg (2005) 23 Cal.Rptr.3d 417, 426-443]

The U.S. Supreme Court in Cunningham v. California, (2007) 549 U.S. _____ [2007 WL 135687] found California's post 1977 DSL-ISL Law which allows a Judge to rely on aggravating circumstances, which are findings of fact under California Law People v. Black, (2005) 35 Cal.4th 1230, not found true by a jury or pled to by a defendant a violation of the Sixth and Fourteenth Amendment.

In Black, supra at 1247, the California Supreme Court, quoting California Rules of Court, Rule 4.421, found "Circumstances in aggravation included: (a) Facts relating to the crime, whether or not charged or chargeable as enhancements, including the fact that:

1) Crime involved great violence, great bodily harm, threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness. 2) Defendant was armed or used a weapon at the time of the commission of the crime 3) Victim was particularly vulnerable 4) Defendant induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants in its commission 5) Defendant induced minors to commit or assist in commission of crime 6) Defendant threatened witnesses, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury,

or in any other way illegally interfered with the judicial process 7) Defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed 8) Manner in which crime was carried out indicates planning, sophistication or professionalism 9) Crime involved an attempted or actual taking or damage of great monetary value  10) Crime involved a large quantity of contraband 11) Defendant took advantage of a position of trust or confidence to commit the offense.

(b) Facts relating to the defendant, including the fact that:

1) Defendant has engaged in violent conduct which indicates a serious danger to society 2) Defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness 3) Defendant has served a prior prison term 4) Defendant was on probation or parole when the crime was committed 5) Defendant's prior performance on probation or parole was unsatisfactory.

(c) Any other facts statutorily declared to be circumstances in aggravation."

Similarly, the judge's "[s]election of the lower term is justified only if, considering the same facts, the circumstances in mitigation outweigh the circumstances in aggravation." (California Rules of Court, rule 4.420 (b).

Notwithstanding 3041(b), the Board shall set a base term for each life prisoner who is found suitable for parole CCR 15 §2403.  The base term shall be established by utilizing the appropriate matrix of base terms provided in this section (Ibid).  The panel shall impose the middle base term reflected in the matrix unless the panel finds circumstances in aggravation or mitigation (Ibid).

Clearly, the Board has the same duty as a sentencing judge, set a base term when circumstances of mitigation are found, or a parole date cannot be fixed by finding the circumstances in aggravation outweigh mitigation PC §3041(b).

Using elements beyond the minimum necessary that sustained the conviction, factors in aggravation Dannenberg supra pg 441 fn 16, to make a finding of

2 h

unsuitability, appears to violate <u>Cunningham</u>, as does CCR 15 provisions that allows the use of aggravating factors, to set a term above the mandated middle term also seems to violate <u>Cunningham</u>.

STANDARD FOR REVIEW

Petitioner, being pro per, asks this court to use less stringent standards than formal pleadings drafted by lawyers, <u>Haines v. Kerner</u> (1972) 404 U.S. 519.

Also, close judicial scrutiny is "warranted" of parole denial based on the offense and past offense, when those offenses occurred years ago, <u>In re Scott</u>, (2005) 133 Cal.App.4th 573; <u>In re Lee</u>, (2006) 143 Cal.App.4th 1400; <u>In re Elkins</u>, (2006) 144 Cal.App.4th 475.

The <u>Elkins</u> Court found the following factors to deny parole did not justify a finding that Elkins would currently pose a risk to society if paroled:

Because he was addicted to drugs and alcohol, on probation for burglary conviction, being prosecuted for grand theft, disciplined twice in prison in 1981 and 1983 for assaultive behavior and in 1990 two reliable confidential informants reported Elkins was a major drug dealer (Marijuana and Crank). The atrociousness, senselessness and gruesomeness of this first degree murder committed in 1980 cannot be overlooked, nor can actions which showed how cold-blooded, dispassionate a killer Mr. Elkins was that fateful night. Elkins acceptance of full responsibility and signs of remorse, while is progress, is too recent a gain to favor parole (Id. 484-487).

In regards to acceptance of responsibility for committing the offense the Elkins Court found no rational support for the astounding conclusion that a prisoner's acceptance of full responsibility did not weigh in favor of parole (Id. 495). The Court also found there was not "some evidence" to support a conclusion that the gravity of Elkin's offense outweighed the positive factors supporting release, coupled with the fact a killing could be avoided violates due process to deny parole where no circumstances of the offense was more

2 i

ggravated than the minimum necessary to sustain a conviction (Id. 476).

The Circumstances or elements finds <u>Elkins</u> and his victim, Larry Eckland, were 19 year old drug dealing associates. Elkins owed Eckland more than a couple of thousand dollars for drug purchases he could not pay, even after he pawned a bunch of his dad's property to Eckland for "stuff". In the early morning hours of June 16, 1979, Eckland was sleeping in the home of Robert Lambrecht after a party. Elkins, who attended the same party, decided to rob Eckland of his drugs and money. Elkins plan was to enter Ecklands room and knock him unconscious, Eckland put up no fight or scuffle, when Eckland failed to knock out after Elkins first blow to his head from a baseball bat, Elkins continued hitting Eckland in the head with the bat until Eckland was out for good. After the killing, Elkins put Eckland's body in the trunk of his car, the next morning Elkins dumped the body in a remote area near Truckee, CA. Elkins then robbed Eckland's storage area and a ex-girlfriend's house, drove to Montana dumped his car, later arrested in Washington State. (Id. 480-482).

The question posed by the court: Does "some evidence" exist that a especially heinous, atrocious or cruel manner murder and failure to accept full responsibility for the murder, an issue treated as lack of remorse, sufficient to support a finding of current risk to public safety?

In answering, the court made the following findings:

First, review of undisputed suitability factors and unsuitability factors which don't apply should be passed over, and since there is no weighing process, neither provide any guidance in the parole process (Id. 492-494). Yet, the crediting of evidence of being discipline-free and having good work record over a number of years supports release (Id. 493).

Next the Court found a parole hearing does not provide a good opportunity to show an offense was not committed in an especially heinous, atrocious, or cruel manner, even if such evidence exists, such an attempt will be seen as an

2 j

unwillingness to accept responsibility and therefore evidence of unsuitability
(Id. 499). As for accepting responsibility "some evidence" must support an
inmate's lack of "understanding the nature and magnitude of the offense" CCR 15
§2402(d)(3), an inmate during a parole hearing is not required to admit guilt
(PC 5011(b)) only the acceptance of all circumstances he's already admitted is
all that is required. Acceptance of responsibility works in favor of release
"[no] matter how recent it is", so long as the inmate "genuinely accepts
responsibility...." (Id. (quoting)(In re Lee, supra at 1414) [Cal. Attorney
General's request to depublish denied by the Cal. Supreme Ct. No. S149411].

Also, an especially heinous, atrocious or cruel murder under CCR 15
§2402(c)(1) used to justify denial of parole because the inmate would pose an
unreasonable risk to danger to society after a lapse of 16 years (quoting Lee)
no longer amounts to "some evidence" to support denial of parole. The court
supported this finding by holding: "A commitment offense is an unsuitability
factor that is immutable and whose predictive value "may be very questionable
after a long period of time. Also, the California Supreme Court has noted,
strong legal and scientific support that "predictions of future dangerousness
are exceedingly unreliable," even where the passage of time is not a factor and
the assessment is made by an expert (quoting)(In re Scott, (2005) 133
Cal.App.4th 573, 594-595 and fn 9)(quoting)(People v. Murtishaw, (1981) 29
Cal.3d 733, 768) (Elkins, supra at 498).

Reliance on a crime as an indicator of dangerousness may be reasonable for
some period of time, yet continued reliance on unchanging circumstances, after
numerous parole suitability hearings, violates due process because offenses
become so remote in time to be a reliable predictor of present or future
dangerousness that it cannot satisfy the "some evidence" standard (Id. 500).

Also, whatever facts make the life-term offense aggravated, which are not
overlooked or disregarded under CCR 15 §2403 matrixes, the use of the life crime

2 k

to deny parole cause parole release to come years after the actual release date that was to be set under the matrix, notwithstanding the lack of evidence to support a finding the inmate actually poses an unreasonable risk of danger to society (CCR 15 § 2402 et seq.; PC §3041(b)) and (Elkins, supra at 499).

Thus, after 16 + years in the caldron of prison life, not exactly an ideal therapeutic environment to say the least, and after repeated demonstrations that despite the recognized hardships of prison, a Life Term Inmate's record [Ex I] and Psych Reports that show he no longer possess attributes of instability, cruelty, impulsiveness, violent tendencies and the like, make predictions base solely on far distant offenses nearly zero (Id. 502). Finally, in Lee, supra at 1408, the Court held that the test to deny parole is not whether some evidence supports the reasons cited, but whether some evidence indicates a parolee's release unreasonably endangers public safety.

The California Supreme Court on February 7, 2007 denied the California Attorney General's Petition for Review of In re Elkins, 2007 DJDAR 1851, case no. S148058. The United States Supreme Court has found that unexplained denials of review by the California Supreme Court is presumed to have been for the same reasons stated in the California Courts of Appeals opinion, the maxim is silence implies consent, not the opposite, affirming without further discussion when the highest State Court agrees, see Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

## PETITIONER'S CONTENTIONS

### GROUND ONE:

Decision that petitioner is unsuitable for parole is not justified when petitioner's record does not support a finding that petitioner currently poses an unreasonable threat to public safety.

Petitioner specifically challenges the reversal of his grant of parole by the Governor on February 21, 2003 (Ex II). The record clearly shows, and the Governor found petitioner has been a model prisoner for over 18 years, upgraded

educationally and vocationally, completed the necessary self-help programs and shown remorse for killing Mr. Morales and for the pain petitioner caused the family of Mr. Morales and his own family.

Contrary to the evidence, the Governor reasoned these positive factors were outweighed by factors that show petitioner would pose an unreasonable risk of danger to society if released at this time.

The factors cited by the Governor include: 1) The number of shots fired into the victim was clearly out of proportion to any threat Mr. Morales posed towards petitioner and suggests a level of anger or lack of control that poses a danger to society, 2) A probation officer's report, which contains the statements of witness Romero, who's testimony was found to be untrue during the preliminary hearing see Exhibit I, page 9, 3) that petitioner lacked remorse 18 years ago because petitioner was not apprehended for almost five months, 4) opposition letters submitted for the prior 2001 hearing, (not the current hearing were petitioner was found suitable), and 5) no firm employment plans in California (see Governor's denial letter Exhibit II).

The Governor's findings are contrary to the Board's findings, record and all the same reliable information presented to the Board during petitioner's 2002 hearing (Ex I) including: 1) there is no evidence to support petitioner has a current anger or lack of control problem, after 18 years of non-violent behavior in prison, this reason cited by the Governor to reverse the Board's grant of parole is not supported by any evidence, 2) the probation report has been found to be unreliable, witness Romero's statements cited by the report and relied upon by the Governor was proven to be untrue during the preliminary hearing, this fact did not escape the Board (see Exhibit I, page 9), only the Governor, 3) lack of remorse 18 years ago does not support a current risk to public safety, 4) Opposition letters written to the 2001 Board, were not a part of the 2002 Board's hearing,  5) Correctional Counselor risk Evaluations have been found to be unreliable by the Courts and ordered not to be used, 6) the

3 a

Governor's finding that petitioner needs firm employment plans in California,
would require petitioner (an illegal with an INS hold) to make plans to enter
the United States illegally, and then communicate those illegal plans to the
Governor in order to be granted a release date, this reason by the Governor is
therefore objectively unreasonable Maritn v. Marshall, 2006 WL 1344584
(N.D.Cal.).

Thus, the Governor's decision that petitioner currently poses an
unreasonable risk if paroled is contrary to petitioner's record and the Board's
own finding that petitioner does not pose an unreasonable risk if paroled.

The Board's record (Ex I) clearly shows petitioner has been a model
prisoner for over  18 years, and has not been involved in any violent or serious
misconduct during his entire incarceration, and has done all the necessary
self-help programs for rehabilitation, including but not limited to, obtained
GED, vocational auto repair, exceptional performance ratings in his work
assignments, long term A/A, Anger Management, and review of his numerous Psych
Reports demonstrate positive changes and successful rehabilitation.

Clearly there is no Evidence, in the record, to support a determination
that petitioner, needs self-help therapy in order to face, discuss, understand,
and cope with stress in a non-destructive manner (he's dealt with stress in a
non-violent manner for over a decade) and nothing [Emphasis Added] in
petitioner's record that would support a finding that petitioner currently poses
an unreasonable threat to public safety if released, even under the minimum
"some evidence" standard.  Nor is there any evidence or law which requires
petitioner to be found to pose a low risk by the psych's for an unknown number
of years prior to being able to allow parole.

The use of the facts of the crime to deny parole is unreasonable since CCR
15 §2403 matrix table addresses the time for which petitioner is to serve and no
facts are beyond those found in the above stated matrix.

As Lee, supra, made clear, "The test is not whether some evidence supports

the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety (Id. 1408). (2006) 431 F. Supp.2d 1038; Sanchez v. Kane, (2006) 444 F. Supp.2d 1049; and Rosenkrantz v. Marshall, (2006) 444 F. Supp.2d 1063. Here, Petitioner is suitable for parole, a finding of unsuitability based on offenses committed many years ago, has no evidentiary support that petitioner currently poses an unreasonable risk to public safety Elkins, supra, at 498; quoting In re Scott, (2005) 133 Cal.App.4th 573, 595, fn.9, which quoted People v. Murtishaw, (1981) 29 Cal.3d 733, 768.

Petitioner admits he had many issues and destructive behavior problems prior to this lengthy period of incarceration. His youth, his lack of education, his abuse of alcohol. Yet, petitioner's record shows he turned his life around, got straight, got help and changed. The Governor's failure to consider all petitioner's rehabilitation efforts that supports a finding petitioner no longer poses a risk to public safety is contrary to California Law, see Scott, supra, Lee, supra, Elkins, supra.

GROUND TWO:

Petitioner's due process rights under the 5th & 14th Amend., of the U.S. Const., were violated by the Governor's use of unchanging factors to reverse petitioner's grant of parole since petitioner had exceeded his minimum term.

While the Governor alleged a few unreliable or unlawful reasons to reverse the Board's grant of petitioner's parole, the Governor's real reason was petitioner's offense, the governor conceded this point in his appellate court reply brief (see Ex VI).

Numerous Courts have found the continued denials of parole based on unchanging factors in face of the rehabilitation of petitioner, espoused by the prison system and in the face of impeccable prison programming, does in fact violate Due Process of Law, finding State Due Process violated in Lee, supra,

4

Elkins, supra, Scott, supra; Federal Due Process violations were found in Martin, supra, Sanchez, supra, Rosenkrantz, supra, and Biggs v. Terhume, (9th Cir. 2003) 334 F.3d 914.

Petitioner's life offense, as explained, has no evidentiary value in proving current dangerousness, what remains is petitioner's rehabilitation which shows his lack of danger to public safety if released on parole.

In order for the Governor to use petitioner's offense to enhance petitioner's minimum term to a life maximum (life without parole) findings of facts must be made by a preponderance of the evidence, McMillan v. Pennsylvania, (1986) 477 U.S. 79.  In the instant case, the Board's record is void of testimony or witnesses, or evidence taken, that petitioner's crime was especially heinous, atrocious, or cruel or that there was no motive, nor does a parole hearing provide a good opportunity to show a murder was not committed in an especially heinous, atrocious, or cruel manner, even when such evidence exists, doing so will be seen as petitioner's unwillingness to accept responsibility and therefore evidence of unsuitability (see Elkins, supra).

In a nut shell, the Governor's findings, which are contrary to the facts based solely on the offense, to deny parole was not proven by a preponderance of the evidence, a finding required by the U. S. Supreme Court McMillan.

Petitioner's minimum term was set by statue at May 18, 2000, (Ex I & II) the United States Court of Appeals has held that due process is not violated by the use of unchanging factors until the minimum term has been reached Irons v. Carey, supra, 2007 U.S. App. Lexis 5198; Biggs v. Terhume, (2003) 334 F.3d 914, again petitioner has completed his minimum term and based on the holding that continued reliance on unchanging circumstances transforms an offense for which California Law provides eligibility for parole into a de facto life without parole, Irons v. Warden, 358 F.Supp.2d 936, and a presumption parole release will be granted when certain conditions have been met McQuillon v. Duncan, 306 F.3d 901, the Governor's reversal of the board's grant of petitioner's parole release violates due process.

4 a

Again, the Governor's reversal, of petitioner's grant of parole by the Board, based on unchanging factors came 2 years after petitioner past his minimum term, a clear violation of due process.

**GROUND THREE:**

The Governor failed to consider the California Department of Corrections and Rehabilitations's (CDCR) assessment that petitioner's commitment offense was not "particular egregious" by housing petitioner in the lowest security level facility allowed in relation to "public safety", such action shows the Governor is taking an opposite and inconsistent position of said offense during parole consideration such an act violates petitioner's right to Due Process under both California and United States Law.

California Law requires the Governor to make findings of fact that petitioner's offense was beyond the minimum necessary to sustain the conviction, when, as here, the offense is going to be used to deny parole, see PC 3041(b) and Dannenberg, supra.

However, petitioner's commitment offense was analyzed by CDCR to determine security level placement, with public safety in mind, and found petitioner's offense was not "Unusually Violent".

CCR 15 3375 (b) requires "Public Safety" to be considered during inmate's classification hearings. CCR 3375.2 (a)(7) states in part: Inmates serving a Life Term Cannot be housed in a Level I or II facility if any of the following case factors apply: Multiple Murders, Unusual Violence, Execution Style Murder, High Notoriety.

CDCR has housed petitioner in a Level II prison for many years, proving CDCR does not consider petitioner a public safety risk based on his offense, nor was petitioner's offense classified as "particular egregious". "Some Evidence" supports CDCR's decision, In re Wilson, 202 Cal.App.3rd 661, 666-667; Superintendent v. Hill, 472 U.S. 445

Thus, nothing in petitioner's record, or factors of petitioner's offenses

4 b

supports a finding to delay the setting of a parole date under PC 3041(b).

CDCR currently houses petitioner at Correction Training Facility - East Dormitory, Level I & Level II housing reserved for non-violent, low risk, working, programming inmates, see <u>Johnson v. California</u>, 321 F.3d 791, 795.

**GROUND FOUR:**

The California Supreme Courts finding in <u>Dannenberg</u>, 23 Cal.Rptr.3d 417, supra, clearly shows PC 3041(b) violates ex post facto and plea by petitioner.

The California Supreme Court in <u>Dannenberg</u>, supra, held "parole authority" must cite aggravating facts beyond the minimum elements necessary to sustain the conviction, in other words evidence the inmate committed a greater degree of offense then found by the jury or plead to by petitioner.

Allowing the "parole authority" to increase the gravity of the offense after its commitment violates the ex post facto cause of the United States Constitution.

The United States Supreme Court held in <u>Stongner v. California</u>, (2003) 123 S.Ct. 2446, "Ex Post Facto Clause prohibits the States from enacting laws with certain retroactive effects" When Laws inflict greater punishment, than the law annexed to the offense. An indeterminate term serves as a carrot and a stick. In California, one found to have committed second degree murder is to serve 15 years to life, assuming the verdict of second degree covers the minimum term of 15 years for the offense, then the "to life" is the carrot for rehabilitation. For California to create a law to allow finding one whose verdict of second degree murder to be denied parole because his crime was decided wrongly, and deny parole by finding the crime was really first degree murder clearly violates the constitution.

California Law requires parole, protected liberty interest in parole has been found, petitioner plead to the entitlement of parole and plead to each and every element of his offense, to allow the Governor to find petitioner committed a greater offense then his conviction evidences is contrary to United States

4 c

Supreme Court holdings in <u>Stonger</u>.

Further, in California, the Governor and the Board Serves a function equivalent to that of a sentencing Judge in a Determinate Term Case, and is therefore bound by the same rules under <u>Cunningham v. California</u>, (2007) 2007 WL 135687.

The Board, as set forth in PC 3041(b) must set a parole release date, unless it finds the gravity of the offense or past offenses requires a lengthier sentence. The rules established for the Board to follow, mandates a date shall be set to a middle term under (CCR 15) §2403 matrix. Here, the Board abided by the law and set petitioner's term within the matrix, yet the Governor reversed by finding circumstances in aggravation which clearly violates <u>Cunningham</u>.

Therefore, the Governor's finding of aggravating facts that petitioner committed a greater degree of an offense then the petitioner's plea verdict evidences violate petitioner's sixth amendment right to a jury trial. For the Governor to deny parole by finding elements beyond the minimum necessary to sustain the conviction, is contrary to U.S. Supreme Court findings in <u>Cunningham</u>, supra, and <u>U.S. v. Gaudin</u>, 515 U.S. 506, 522-523 (1995) "A jury verdict that one is guilty of the crime means, of course, a verdict that one is guilty of each necessary element of the crime.

**GROUND FIVE:**

Denial of parole under California Governor's no-parole policy for murderers denied petitioner his due process right to be heard by an impartial decision maker <u>U.S.C.A. CONST.AMEND. 14</u>.

The flimsy nature of the evidence underlying the Governor's denial of parole and the facile, legally flawed argument with respect to petitioner's parole plans indicate another problem with the denial of parole in this case. A recent decision from the United States District Court for the Eastern District of California concluded that Governor Davis operated under a blanket no-parole policy for inmates, such as petitioner, serving sentences for murder <u>Martin</u>,

supra, 2006 WL 1344584, page 10-12 citing <u>Coleman</u> 96-0783 LKK PAN.

In the instant case, using the <u>Maritn</u> case as support, Governor's Davis reasoning behind his reversal of petitioner's parole grant is thin to the point of being pretextual. At best, the Governor gave petitioner's post-conviction accomplishments cursory attention; the conclusion, appears to have been preordained.

CONCLUSION

While murderers represent the basest form of human behavior. California Laws provide for mechanisms by which even murderers are entitled to certain rights. The judiciary has an obligation to execute those laws.

Petitioner's case must be reviewed under the most recent rulings since the Governor reversed the Board's grant of parole in 2003. Those decision include: <u>Ross</u> 2007 DJDAR 3847 (Ex VIII) granted review against the Governor, ordering reconsideration under, <u>Elkins</u>, supra, (2006) 144 Cal.App.4th 475; <u>Lee</u>, supra, (2006) 143 Cal.App.4th 1400; and <u>Scott</u>, supra, (2005) 133 Cal.App.4th 573; requiring the same consideration for petitioner.

The Governor's own record of petitioner's parole readiness does not establish that petitioner unreasonably poses a risk to public safety. Any contrary conclusion lacks evidentiary support. In the absence of any evidence in the record supporting the Board's decision, remanding this case for a new hearing is futile, the appropriate remedy is to grant the release of petitioner <u>Saif'ullah</u> 2005 WL 1555389 at *16; <u>Rosenkrantz v. Marshall</u>, 2006 WL 2327085; <u>McQuillion v. Duncan</u>, (2003) 342 F.3d 1012, 1015-1016; <u>Lee</u>, supra; and <u>Elkins</u>, supra.

///

///

///

///

8. Did you appeal from the conviction, sentence, or commitment?  ☐ Yes.  ☒ No.   If yes, give the following information:

  a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

    _Conviction was through plea agreement, no appeal._

  b. Result: _____     c. Date of decision: _____

  d. Case number or citation of opinion, if known: _____

  e. Issues raised:  (1) _____

    (2) _____

    (3) _____

  f. Were you represented by counsel on appeal?  ☐ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

    _____

9. Did you seek review in the California Supreme Court?  ☐ Yes.  ☐ No.   If yes, give the following information:

  a. Result: _____     b. Date of decision: _____

  c. Case number or citation of opinion, if known: _____

  d. Issues raised:  (1) _____

    (2) _____

    (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    _Issue no ripe during time for appeal, yet petitioner plea to second degree_
    _murder for 15 years to life with parole, did not know he was pleading to life_
    _with no real chance of parole._

11. Administrative Review:

  a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

    _There is no administrative review process._

    _____

    _____

    _____

    _____

    _____

    _____

    _____

  b. Did you seek the highest level of administrative review available?  ☒ Yes.  ☐ No.
    *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?    ☒ Yes. If yes, continue with number 13.    ☐ No. If no, skip to number 15.

13. a. (1) Name of court: __Superior Court of California - County of San Luis Obispo__

    (2) Nature of proceeding (for example, "habeas corpus petition"): __Habeas Corpus__

    (3) Issues raised: (a) __Was the Governor's decision supported by "some evidence"__

       (b) _____

    (4) Result *(Attach order or explain why unavailable)*: __Granted    (Don't actual court order)__

    (5) Date of decision: __September 17, 2003 (See Exhibit IV, page 3)__

  b. (1) Name of court: __California Courts of Appeal - Second Appellate District__

    (2) Nature of proceeding: __Appeal from order of Superior Court__

    (3) Issues raised: (a) __Superior Court's abuse of discretion in reversing the Governor's decision.__

       (b) _____

    (4) Result *(Attach order or explain why unavailable)*: __Reversed (see Exhibit VII)__

    (5) Date of decision: __July 22, 2004__

  c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

    __No evidentiary hearings held.__

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

    __No delay, this petition is being filed based on new Court decisions, specifically;__

    __Ross, 2007 DJDAR 3847; Elkins, (2006) 144 Cal.App.4th 475; Lee, (2006) 143 Cal.App.4th__

    __1400; and Scott, (2005) 133 Cal.App.4th 573.__

16. Are you presently represented by counsel?    ☐ Yes.    ☒ No.  If yes, state the attorney's name and address, if known:

    _____

17. Do you have any petition, appeal, or other matter pending in any court?    ☐ Yes.    ☒ No.  If yes, explain:

    _____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

    __This petition is being made to this court, since this court issued the last decision__

    __which has since reverse its own reasoning for the prior denial in Lee, supra.__

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 4/8/07              *(signature)*
                                      (SIGNATURE OF PETITIONER)

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
#### (C.C.P. §§ 1013(A), 2015,5)

I, ___Miguel Molina_____, declare:

I am over 18 years of age and I am party to this action.  I am a resident of CORRECTIONAL TRAINING FACILITY prison, in the County of Monterrey, State of California.  My prison address is:

> Miguel molina_____, CDCR #:D-21051_____
> CORRECTIONAL TRAINING FACILITY
> P.O. BOX 689, CELL #: ED-076-Low_____
> SOLEDAD, CA  93960-0689.

On ___April 8, 2007_____, I served the attached:

___Petition for Writ of Habeas Corpus._____

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope (verified by prison staff), with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named institution in which I am presently confined.  The envelope was addressed as follows:

California Courts of Appeal
Second Appellate District
300 S. Spring St.
Floor 2 N. Tower
Los Angeles, CA 90013-1213

Department of Justice
California Attorney General
300 S. Spring St.
Los Angeles, CA 90013

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 8, 2007_____.

Miguel Molina_____
Declarant