# EXHIBIT   H

Miguel Molina
D-21051 ED-076-Low
P.O. Box 689
Soledad, CA 93960-0689
Pro Per

**S152342**

SUPREME COURT
**FILED**
APR 26 2007
Frederick K. Ohlrich Clerk
_____
Deputy _____

CALIFORNIA SUPREME COURT

| | |
|---|---|
| Miguel Molina, | ) Case No. |
| Petitioner, | ) |
| | ) **PETITION FOR REVIEW** |
| v. | ) |
| | ) Review of California Courts of Appeal |
| BEN CURRY, Warden (A), et al., | ) denial, case no. B198185. |
| | ) |
| Respondent. | ) |

INTRODUCTION

Petitioner, Miguel Molina, request this court to review petitioner's denial of his petition for writ of habeas corpus by the California Courts of Appeal – Second Appellate District, case no. B198185, on April 19, 2007 attachment A.

NECESSITY FOR REVIEW

The Board of Prison Terms found petitioner suitable for parole, the then Governor Davis reversed petitioner's grant of parole, the Superior Court reversed the Governor, and the Appellate Court reversed the Superior Court.

After these decisions, differing appellate courts having differing standards in reviewing the Governor's reversal's (see Elkins, 144 Cal.App.4th 496-498; Lee, 143 Cal.App.4th 1408; and Scott 133 Cal.App.4th 594-595) necessitating review by this court to provided uniformity and stability in parole law. Or remand as this court did in Ross 2007 DJDAR 3847 see attachment B

RECEIVED
APR 26 2007
CLERK SUPREME COURT

INTRODUCTION

Petitioner, Miguel Molina, was found suitable for parole during his hearing held by the Board of Prison Terms (Board) on September 25, 2002, and granted release on parole by August 18, 1997 (Exhibit I) (Exhibits Bound and Submitted Separately). This parole release was reversed by then California Governor Gray Davis, on February 21, 2003 (Exhibit II).

Specifically, the Board found: Witness [Romero] testimony that petitioner had stated he was going to kill the victim, was found not to be true at the preliminary hearing (Ex I, pg 9).

The Board's record also shows: On December 5, 1984, Mr. Molina fatally shot Ruben Morales. Mr. Morales and Mr. Molina had an ongoing feud. Witnesses who knew both of them indicated that one month before the shooting there was a confrontation between the two where the victim pulled the knife on Mr. Molina. That can be found in the sentencing transcripts, pages three and four, eight, nine, and the preliminary hearing transcripts 151 to 152. Mr. Molina ran away, but was pursued by Mr. Morales in a vehicle until it became impossible for him to continue the pursuit. On December 5, 1984, the day of the shooting, there was a fight at work between the two. Then the victim came to Mr. Molina's residence and accosted him, and that's when he emptied his weapon into the victim (Ex I, pg 37).

The Board's decision (Ex I, pgs 43 - 47) states in part: The Panel has reviewed all information received from the public and relied on the following circumstances in concluding that the prisoner is suitable for parole and would not pose an unreasonable risk of danger to society or threat to public safety if released from prison. Has no juvenile record, has a stable social history, no 115's in his entirety of incarceration time, enhanced ability to function within

the law upon release, got a GED, has beneficial self-help, therapy, vocational trade, marketable job skills, positive work reports, crime committed as a result of significant stress in his life in that the victim played some role in this in that he threaten petitioner with a knife prior to the event, maturation and growth, realistic parole plans in Mexico, close family ties, remorse, understands the nature and magnitude of the offense, accepts responsibility, has a desire to be a good citizenship, psychologist report supportive of release, and alcohol abuse in long term remission. (Ex I, pgs 43-45).

The Board then found petitioner's crime fell squarely within the California Code of Regulations (CCR 15) §2403 (c), second degree murder matrix table, the Panel found category 2B to be the appropriate one, and set the total term at 216 months then awarded prison conduct credits of 68 months, setting petitioner's total term to serve at 148 months [216 months - 68 months = 148 months] (Ex I pg 46), the statutory legislatively approved prescribed term for the gravity and magnitude of the offense and its threat to public safety. Obviously when the Board finds an offense to fit within the matrix, the offense cannot be beyond the minimum necessary to sustain the conviction.

California law requires the Board to set a parole release date, when as here, the crime falls within this matrix, California Penal Code (PC) 3041(a) and petitioner met or exceeded all suitability requirements, the Board lawfully completed their mandated duty, found petitioner suitable and granted his parole release.

Petitioner having a liberty interest in parole protected by due process, Irons v. Carey,     F.3d     , 2007 U.S. App. Lexis 5198, at *7 (9th Cir. Mar. 6, 2007); Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006), has served his minimum term, and has been found suitable for parole by the Board, and as will be explained, no evidence supports the reasons given

by the Governor's reversal of the Board's decision (Ex II) a decision which must

be reversed in light of the recent rulings in In re Scott, (2005) 133

Cal.App.4th 573 (review denied); In re Lee, (2006) 143 Cal.App.4th 1400 (State

did not request review) and In re Elkins, (2006) 144 Cal.App.4th 475 (review

denied).

## STATEMENT OF CASE

Petitioner pled guilty to second degree murder and sentenced to an

indeterminate prison term of 15 to life, with a minimum eligible parole date of

July 31st of 1994 (Ex I, pg 1).

On September 25, 2002, the Board conducted a parole consideration hearing

and a majority found petitioner suitable for parole (Id. pgs 43-47) and set a

term of 148 months (Id. pg 46) establishing a parole release date of August 18,

1997. However, on February 21, 2003 the then Governor Gray Davis (the Governor)

reviewed the Board's decision and reversed it, finding petitioner was not

suitable for parole, citing: the probation officer's report (which cites the

impeached witness statements) that petitioner threatened to kill Mr. Morales,

that Mr. Morales was watching television when shot, that petitioner showed a

lack of remorse by not turning himself in to authorities for almost five months,

Correctional Counselor evaluator's conclusion that petitioner would likely pose

a moderate degree of risk, lack of parole plans in California (Ex II).

Thereafter, petitioner challenged that decision by filing a Petition for

Writ of Habeas Corpus in the San Luis Obispo County Superior Court case

no. CR13298. On July 31, 2003, the Governor filed his Return to Order to Show

Cause along with Points and Authorities in Support. On August 6, 2003,

petitioner filed his Denial along with Points and Authorities in Support (Ex

III). The Superior Court subsequently issued its order and findings that an evidentiary was not necessary and further declaring that the Court had reviewed the petition, the return, the denial and the relevant portions of the record in chambers. The Superior Court then stated that for all the reasons cited in petitioner's memorandum of points and authorities in support of denial to return filed August 6, 2003, granted the petition.

The Governor appealed from the trial court's order challenging the findings by the Court, Appellant's Opening Brief was filed on February 27, 2004, (Ex IV), Respondent's Brief was filed March 9, 2004, (Ex V), and Appellant's Reply Brief was filed on March 29, 2004 (Ex VI).

The California Courts of Appeal, Second Appellate District, reversed the Trial Courts Order on July 22, 2004 case no. B170538.

The opinion by the appellate court was made prior to the rulings which clarified the application of In re Rosenkrantz, (2002) 29 Cal.4th 616 which the court exclusively relied to support the Governor's decision.

Scott, (supra, infra) Elkins, (supra, infra) and Lee, (supra, infra) decided in this district held close judicial scrutiny is warranted of parole denial based on the offense, when the offense occurred years ago, and the test is not whether some evidence supports the reasons cited, but whether some evidence indicates a parolee's release unreasonably endangers public safety, and when no evidence supports a decision, the proper remedy is release, remand for a new decision being futile.

Petitioner has been in continued incarceration for over 16 years, has exceeded his minimum term of 15 years, arrested May 18, 1985 + 15 years = minimum term reached on May 18, 2000, and no evidence in his record would support any decision that he poses a risk to public safety when released on parole.

### DISCUSSIONAL HISTORY

Summerizing the California Supreme Court's findings in In re Dannenberg (Infra).

For decades before 1977, California employed an "indeterminate" sentencing system (ISL) for felonies. An inmate's actual period of incarceration within this range was under the exclusive control of the parole authority, which focused primarily, not on the appropriate punishment for the offense, but on the offender's progress toward rehabilitation. The Determinate Sentencing Law (DSL) adopted in 1976, largely abandoned the (ISL) system with the Legislature declaring that "the purpose of imprisonment for crime is punishment". Under pre-1977 ISL and post-1977 ISL-DSL Laws, life inmates actual confinement periods within the statutory range are decided by an executive parole agency, an arm of the California Department of Correction (and Rehabilitations)(CDCR).

This parole agency meets with a life inmate one year prior to his minimum eligible parole date (an actual release date) and "shall normally set a parole release date" in a manner that will provide uniform terms for offenses of similar gravity and magnitude, the release date also must "comply with the sentencing rules of the Judicial Council and the [Board of Parole Hearings] Board must "establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime and other factors in mitigation or aggravation of the crime (California Penal Code 3041(a)).

In response to these requirements, the Board adopted regulations covering the various categories of ISL inmates (California Code of Regulations, Title 15 (CCR 15) § 2400 et seg.). These regulations specify that the inmate's release date is to be set by calculating a "base term". The first step in the calculation is to determine where the particular murder fits, in terms of its relative seriousness, on a bi-axial "matrix" of factual variables. (Ibid.) The matrix specifies lower, middle, and upper "base terms" for each matrix category (Id., 2403(c).). Once the proper matrix category is selected, the Board must

impose the middle term unless it finds aggravating circumstances not accounted for in the matrix (Id. 2403(a).).

However, PC 3041(b) provides that a parole release date shall be set, "unless" the Board determines that the inmate is presently unsuitable for the fixing of a parole date, i.e., that "the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual.

The California Legislature clearly intended to apply DSL principles to life-maximum inmates [citation]. Thus, the Board "shall" set a "uniform' parole release date "unless," the Board concludes that a longer period of confinement is warranted for "this individual" by public safety concerns arising from the circumstances of the prisoner's commitment offense or criminal history.

Under the pre-1977 sentencing regime, almost all convicted felons received ISL terms, with short minimums and life maximums. Under this system the parole authority was required to set actual maximum terms for all inmates, proportionate to their individual culpability; this requirement was derived from former PC 3020. Thus, an inmate who made good progress in prison could be granted parole before the end of his maximum term, as fixed by the Adult Authority, but in any event must be released upon expiration of that maximum term [citation]. Also, under pre-1977 system, parole dates for ISL inmates based "primarily upon the nature of the principle commitment offense, supplemented by mathematical increments for additional precommitment offenses" violated the duty to consider all factors relevant to the inmate's suitability for parole.

Adoption of the DSL, with its fixed statutory terms followed by mandatory parole, combined the term-setting and parole functions. In this regard, its been noted that the nature of the offense alone can constitute a sufficient basis for denying parole [citation]. However, sole reliance on the offense

might violate PC 3041(a) where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense. Therefore, "When the Board bases unsuitability on the circumstances of the commitment offense, it must cite "some evidence" of aggravating facts beyond the minimum elements of that offense [citation] in other words evidence the inmate committed a greater degree of the offense that his or her conviction evidences, i.e. the offense is "particularly egregious" defined as especially heinous, atrocious or cruel manner. And, no prisoner can be held for a period grossly disproportionate to his or her individual culpability for the commitment offense.

[Above Summary taken from In re Dannenberg (2005) 23 Cal.Rptr.3d 417, 426-443]

The U.S. Supreme Court in Cunningham v. California, (2007) 549 U.S. _____ [2007 WL 135687] found California's post 1977 DSL-ISL Law which allows a Judge to rely on aggravating circumstances, which are findings of fact under California Law People v. Black, (2005) 35 Cal.4th 1230, not found true by a jury or pled to by a defendant a violation of the Sixth and Fourteenth Amendment.

In Black, supra at 1247, the California Supreme Court, quoting California Rules of Court, Rule 4.421, found "Circumstances in aggravation included: (a) Facts relating to the crime, whether or not charged or chargeable as enhancements, including the fact that:
1) Crime involved great violence, great bodily harm, threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness.
2) Defendant was armed or used a weapon at the time of the commission of the crime 3) Victim was particularly vulnerable 4) Defendant induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants in its commission 5) Defendant induced minors to commit or assist in commission of crime 6) Defendant threatened witnesses, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury,

or in any other way illegally interfered with the judicial process 7) Defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed 8) Manner in which crime was carried out indicates planning, sophistication or professionalism 9) Crime involved an attempted or actual taking or damage of great monetary value  10) Crime involved a large quantity of contraband 11) Defendant took advantage of a position of trust or confidence to commit the offense.

(b) Facts relating to the defendant, including the fact that:

1) Defendant has engaged in violent conduct which indicates a serious danger to society 2) Defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness 3) Defendant has served a prior prison term 4) Defendant was on probation or parole when the crime was committed 5) Defendant's prior performance on probation or parole was unsatisfactory.

(c) Any other facts statutorily declared to be circumstances in aggravation."

Similarly, the judge's "[s]election of the lower term is justified only if, considering the same facts, the circumstances in mitigation outweigh the circumstances in aggravation." (California Rules of Court, rule 4.420 (b).

Notwithstanding 3041(b), the Board shall set a base term for each life prisoner who is found suitable for parole CCR 15 §2403. The base term shall be established by utilizing the appropriate matrix of base terms provided in this section (Ibid). The panel shall impose the middle base term reflected in the matrix unless the panel finds circumstances in aggravation or mitigation (Ibid).

Clearly, the Board has the same duty as a sentencing judge, set a base term when circumstances of mitigation are found, or a parole date cannot be fixed by finding the circumstances in aggravation outweigh mitigation PC §3041(b).

Using elements beyond the minimum necessary that sustained the conviction, factors in aggravation Dannenberg supra pg. 441 fn 16, to make a finding of

unsuitability, appears to violate Cunningham, as does CCR 15 provisions that allows the use of aggravating factors, to set a term above the mandated middle term also seems to violate Cunningham.

## STANDARD FOR REVIEW

Petitioner, being pro per, asks this court to use less stringent standards than formal pleadings drafted by lawyers, Haines v. Kerner (1972) 404 U.S. 519.

Also, close judicial scrutiny is "warranted" of parole denial based on the offense and past offense, when those offenses occurred years ago, In re Scott, (2005) 133 Cal.App.4th 573; In re Lee, (2006) 143 Cal.App.4th 1400; In re Elkins, (2006) 144 Cal.App.4th 475.

The Elkins Court found the following factors to deny parole did not justify a finding that Elkins would currently pose a risk to society if paroled:

Because he was addicted to drugs and alcohol, on probation for burglary conviction, being prosecuted for grand theft, disciplined twice in prison in 1981 and 1983 for assaultive behavior and in 1990 two reliable confidential informants reported Elkins was a major drug dealer (Marijuana and Crank). The atrociousness, senselessness and gruesomeness of this first degree murder committed in 1980 cannot be overlooked, nor can actions which showed how cold-blooded, dispassionate a killer Mr. Elkins was that fateful night. Elkins acceptance of full responsibility and signs of remorse, while is progress, is too recent a gain to favor parole (Id. 484-487).

In regards to acceptance of responsibility for committing the offense the Elkins Court found no rational support for the astounding conclusion that a prisoner's acceptance of full responsibility did not weigh in favor of parole (Id. 495). The Court also found there was not "some evidence" to support a conclusion that the gravity of Elkin's offense outweighed the positive factors supporting release, coupled with the fact a killing could be avoided violates due process to deny parole where no circumstances of the offense was more

aggravated than the minimum necessary to sustain a conviction (Id. 476).

The Circumstances or elements finds Elkins and his victim, Larry Eckland,
were 19 year old drug dealing associates. Elkins owed Eckland more than a
couple of thousand dollars for drug purchases he could not pay, even after he
pawned a bunch of his dad's property to Eckland for "stuff". In the early
morning hours of June 16, 1979, Eckland was sleeping in the home of Robert
Lambrecht after a party. Elkins, who attended the same party, decided to rob
Eckland of his drugs and money. Elkins plan was to enter Ecklands room and
knock him unconscious, Eckland put up no fight or scuffle, when Eckland failed
to knock out after Elkins first blow to his head from a baseball bat, Elkins
continued hitting Eckland in the head with the bat until Eckland was out for
good. After the killing, Elkins put Eckland's body in the trunk of his car, the
next morning Elkins dumped the body in a remote area near Truckee, CA. Elkins
then robbed Eckland's storage area and a ex-girlfriend's house, drove to
Montana dumped his car, later arrested in Washington State (Id. 480-482).

The question posed by the court: Does "some evidence" exist that a
especially heinous, atrocious or cruel manner murder and failure to accept full
responsibility for the murder, an issue treated as lack of remorse, sufficient
to support a finding of current risk to public safety?

In answering, the court made the following findings:

First, review of undisputed suitability factors and unsuitability factors
which don't apply should be passed over, and since there is no weighing process,
neither provide any guidance in the parole process (Id. 492-494). Yet, the
crediting of evidence of being discipline-free and having good work record over
a number of years supports release (Id. 493).

Next the Court found a parole hearing does not provide a good opportunity
to show an offense was not committed in an especially heinous, atrocious, or
cruel manner, even if such evidence exists, such an attempt will be seen as an

unwillingness to accept responsibility and therefore evidence of unsuitability
(Id. 499). As for accepting responsibility "some evidence" must support an
inmate's lack of "understanding the nature and magnitude of the offense" CCR 15
§2402(d)(3), an inmate during a parole hearing is not required to admit guilt
(PC 5011(b)) only the acceptance of all circumstances he's already admitted is
all that is required. Acceptance of responsibility works in favor of release
"[no] matter how recent it is", so long as the inmate "genuinely accepts
responsibility...." (Id. (quoting)(In re Lee, supra at 1414) [Cal. Attorney
General's request to depublish denied by the Cal. Supreme Ct. No. S149411].

Also, an especially heinous, atrocious or cruel murder under CCR 15
§2402(c)(1) used to justify denial of parole because the inmate would pose an
unreasonable risk to danger to society after a lapse of 16 years (quoting Lee)
no longer amounts to "some evidence" to support denial of parole. The court
supported this finding by holding: "A commitment offense is an unsuitability
factor that is immutable and whose predictive value "may be very questionable
after a long period of time. Also, the California Supreme Court has noted,
strong legal and scientific support that "predictions of future dangerousness
are exceedingly unreliable," even where the passage of time is not a factor and
the assessment is made by an expert (quoting)(In re Scott, (2005) 133
Cal.App.4th 573, 594-595 and fn 9)(quoting)(People v. Martishaw, (1981) 29
Cal.3d 733, 768) (Elkins, supra at 498).

Reliance on a crime as an indicator of dangerousness may be reasonable for
some period of time, yet continued reliance on unchanging circumstances, after
numerous parole suitability hearings, violates due process because offenses
become so remote in time to be a reliable predictor of present or future
dangerousness that it cannot satisfy the "some evidence" standard (Id. 500).

Also, whatever facts make the life-term offense aggravated, which are not
overlooked or disregarded under CCR 15 §2403 matrixes, the use of the life crime

to deny parole cause parole release to come years after the actual release date
that was to be set under the matrix, notwithstanding the lack of evidence to
support a finding the inmate actually poses an unreasonable risk of danger to
society (CCR 15 § 2402 et seq.; PC §3041(b)) and (Elkins, supra at 499).

Thus, after 16 + years in the caldron of prison life, not exactly an ideal
therapeutic environment to say the least, and after repeated demonstrations that
despite the recognized hardships of prison, a Life Term Inmate's record [Ex I]
and Psych Reports that show he no longer possess attributes of instability,
cruelty, impulsiveness, violent tendencies and the like, make predictions base
solely on far distant offenses nearly zero (Id. 502). Finally, in Lee, supra at
1408, the Court held that the test to deny parole is not whether some evidence
supports the reasons cited, but whether some evidence indicates a parolee's
release unreasonably endangers public safety.

The California Supreme Court on February 7, 2007 denied the California
Attorney General's Petition for Review of In re Elkins, 2007 DJDAR 1851, case
no. S148058. The United States Supreme Court has found that unexplained denials
of review by the California Supreme Court is presumed to have been for the same
reasons stated in the California Courts of Appeals opinion, the maxim is silence
implies consent, not the opposite, affirming without further discussion when the
highest State Court agrees, see Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).


## PETITIONER'S CONTENTIONS

**GROUND ONE:**

Decision that petitioner is unsuitable for parole is not justified when
petitioner's record does not support a finding that petitioner currently poses
an unreasonable threat to public safety.

Petitioner specifically challenges the reversal of his grant of parole by
the Governor on February 21, 2003 (Ex II). The record clearly shows, and the
Governor found petitioner has been a model prisoner for over 18 years, upgraded

educationally and vocationally, completed the necessary self-help programs and
shown remorse for killing Mr. Morales and for the pain petitioner caused the
family of Mr. Morales and his own family.

Contrary to the evidence, the Governor reasoned these positive factors were
outweighed by factors that show petitioner would pose an unreasonable risk of
danger to society if released at this time.

The factors cited by the Governor include:  1) The number of shots fired
into the victim was clearly out of proportion to any threat Mr. Morales posed
towards petitioner and suggests a level of anger or lack of control that poses a
danger to society, 2) A probation officer's report, which contains the
statements of witness Romero, who's testimony was found to be untrue during the
preliminary hearing see Exhibit I, page 9, 3) that petitioner lacked remorse 18
years ago because petitioner was not apprehended for almost five months, 4)
opposition letters submitted for the prior 2001 hearing, (not the current
hearing were petitioner was found suitable), and 5) no firm employment plans in
California (see Governor's denial letter Exhibit II).

The Governor's findings are contrary to the Board's findings, record and
all the same reliable information presented to the Board during petitioner's
2002 hearing (Ex I) including:  1) there is no evidence to support petitioner
has a current anger or lack of control problem, after 18 years of non-violent
behavior in prison, this reason cited by the Governor to reverse the Board's
grant of parole is not supported by any evidence, 2) the probation report has
been found to be unreliable, witness Romero's statements cited by the report and
relied upon by the Governor was proven to be untrue during the preliminary
hearing, this fact did not escape the Board (see Exhibit I, page 9), only the
Governor,  3) lack of remorse 18 years ago does not support a current risk to
public safety, 4) Opposition letters written to the 2001 Board, were not a part
of the 2002 Board's hearing,  5) Correctional Counselor risk Evaluations have
been found to be unreliable by the Courts and ordered not to be used,  6) the

Governor's finding that petitioner needs firm employment plans in California,
would require petitioner (an illegal with an INS hold) to make plans to enter
the United States illegally, and then communicate those illegal plans to the
Governor in order to be granted a release date, this reason by the Governor is
therefore objectively unreasonable Maritn v. Marshall, 2006 WL 1344584
(N.D.Cal.).

Thus, the Governor's decision that petitioner currently poses an
unreasonable risk if paroled is contrary to petitioner's record and the Board's
own finding that petitioner does not pose an unreasonable risk if paroled.

The Board's record (Ex I) clearly shows petitioner has been a model
prisoner for over 18 years, and has not been involved in any violent or serious
misconduct during his entire incarceration, and has done all the necessary
self-help programs for rehabilitation, including but not limited to, obtained
GED, vocational auto repair, exceptional performance ratings in his work
assignments, long term A/A, Anger Management, and review of his numerous Psych
Reports demonstrate positive changes and successful rehabilitation.

Clearly there is no Evidence, in the record, to support a determination
that petitioner, needs self-help therapy in order to face, discuss, understand,
and cope with stress in a non-destructive manner (he's dealt with stress in a
non-violent manner for over a decade) and nothing [Emphasis Added] in
petitioner's record that would support a finding that petitioner currently poses
an unreasonable threat to public safety if released, even under the minimum
"some evidence" standard. Nor is there any evidence or law which requires
petitioner to be found to pose a low risk by the psych's for an unknown number
of years prior to being able to allow parole.

The use of the facts of the crime to deny parole is unreasonable since CCR
15 §2403 matrix table addresses the time for which petitioner is to serve and no
facts are beyond those found in the above stated matrix.

As Lee, supra, made clear, "The test is not whether some evidence supports

the reasons the Governor cites for denying parole, but whether some evidence
indicates a parolee's release unreasonably endangers public safety (Id. 1408).
(2006) 431 F. Supp.2d 1038; Sanchez v. Kane, (2006) 444 F. Supp.2d 1049; and
Rosenkrantz v. Marshall, (2006) 444 F. Supp.2d 1063. Here, Petitioner is
suitable for parole, a finding of unsuitability based on offenses committed many
years ago, has no evidentiary support that petitioner currently poses an
unreasonable risk to public safety Elkins, supra, at 498; quoting In re
Scott, (2005) 133 Cal.App.4th 573, 595, fn.9, which quoted People v. Murtishaw,
(1981) 29 Cal.3d 733, 768.

Petitioner admits he had many issues and destructive behavior problems
prior to this lengthy period of incarceration. His youth, his lack of
education, his abuse of alcohol. Yet, petitioner's record shows he turned his
life around, got straight, got help and changed. The Governor's failure to
consider all petitioner's rehabilitation efforts that supports a finding
petitioner no longer poses a risk to public safety is contrary to California
Law, see Scott, supra, Lee, supra, Elkins, supra.

GROUND TWO:

Petitioner's due process rights under the 5th & 14th Amend., of the
U.S. Const., were violated by the Governor's use of unchanging factors to
reverse petitioner's grant of parole since petitioner had exceeded his minimum
term.

While the Governor alleged a few unreliable or unlawful reasons to reverse
the Board's grant of petitioner's parole, the Governor's real reason was
petitioner's offense, the governor conceded this point in his appellate court
reply brief (see Ex VI).

Numerous Courts have found the continued denials of parole based on
unchanging factors in face of the rehabilitation of petitioner, espoused by the
prison system and in the face of impeccable prison programming, does in fact
violate Due Process of Law, finding State Due Process violated in Lee, supra,

Elkins, supra, Scott, supra; Federal Due Process violations were found in
Martin, supra, Sanchez, supra, Rosenkrantz, supra, and Biggs v. Terhume, (9th
Cir. 2003) 334 F.3d 914.

Petitioner's life offense, as explained, has no evidentiary value in
proving current dangerousness, what remains is petitioner's rehabilitation which
shows his lack of danger to public safety if released on parole.

In order for the Governor to use petitioner's offense to enhance
petitioner's minimum term to a life maximum (life without parole) findings of
facts must be made by a preponderance of the evidence, McMillan v. Pennsylvania,
(1986) 477 U.S. 79. In the instant case, the Board's record is void of
testimony or witnesses, or evidence taken, that petitioner's crime was
especially heinous, atrocious, or cruel or that there was no motive, nor does a
parole hearing provide a good opportunity to show a murder was not committed in
an especially heinous, atrocious, or cruel manner, even when such evidence
exists, doing so will be seen as petitioner's unwillingness to accept
responsibility and therefore evidence of unsuitability (see Elkins, supra).

In a nut shell, the Governor's findings, which are contrary to the facts
based solely on the offense, to deny parole was not proven by a preponderance of
the evidence, a finding required by the U. S. Supreme Court McMillan.

Petitioner's minimum term was set by statue at May 18, 2000,
(Ex I & II) the United States Court of Appeals has held that due process is not
violated by the use of unchanging factors until the minimum term has been
reached Irons v. Carey, supra, 2007 U.S. App. Lexis 5198; Biggs v. Terhume,
(2003) 334 F.3d 914, again petitioner has completed his minimum term and based
on the holding that continued reliance on unchanging circumstances transforms an
offense for which California Law provides eligibility for parole into a de facto
life without parole, Irons v. Warden, 358 F.Supp.2d 936, and a presumption
parole release will be granted when certain conditions have been met McQuillon
v. Duncan, 306 F.3d 901, the Governor's reversal of the board's grant of
petitioner's parole release violates due process.

Again, the Governor's reversal, of petitioner's grant of parole by the Board, based on unchanging factors came 2 years after petitioner past his minimum term, a clear violation of due process.

GROUND THREE:

The Governor failed to consider the California Department of Corrections and Rehabilitations's (CDCR) assessment that petitioner's commitment offense was not "particular egregious" by housing petitioner in the lowest security level facility allowed in relation to "public safety", such action shows the Governor is taking an opposite and inconsistent position of said offense during parole consideration such an act violates petitioner's right to Due Process under both California and United States Law.

California Law requires the Governor to make findings of fact that petitioner's offense was beyond the minimum necessary to sustain the conviction, when, as here, the offense is going to be used to deny parole, see PC 3041(b) and Dannenberg, supra.

However, petitioner's commitment offense was analyzed by CDCR to determine security level placement, with public safety in mind, and found petitioner's offense was not "Unusually Violent".

CCR 15.3375 (b) requires "Public Safety" to be considered during inmate's classification hearings. CCR 3375.2 (a)(7) states in part: Inmates serving a Life Term Cannot be housed in a Level I or II facility if any of the following case factors apply: Multiple Murders, Unusual Violence, Execution Style Murder, High Notoriety.

CDCR has housed petitioner in a Level II prison for many years, proving CDCR does not consider petitioner a public safety risk based on his offense, nor was petitioner's offense classified as "particular egregious". "Some Evidence" supports CDCR's decision, In re Wilson, 202 Cal.App.3rd 661, 666-667; Superintendent v. Hill, 472 U.S. 445

Thus, nothing in petitioner's record, or factors of petitioner's offenses

supports a finding to delay the setting of a parole date under PC 3041(b).

CDCR currently houses petitioner at Correction Training Facility - East Dormitory, Level I & Level II housing reserved for non-violent, low risk, working, programming inmates; see <u>Johnson v. California</u>, 321 F.3d 791, 795.

GROUND FOUR:

The California Supreme Courts finding in <u>Dannenberg</u>, 23 Cal.Rptr.3d 417, supra, clearly shows PC 3041(b) violates ex post facto and plea by petitioner.

The California Supreme Court in <u>Dannenberg</u>, supra, held "parole authority" must cite aggravating facts beyond the minimum elements necessary to sustain the conviction, in other words evidence the inmate committed a greater degree of offense then found by the jury or plead to by petitioner.

Allowing the "parole authority" to increase the gravity of the offense after its commitment violates the ex post facto cause of the United States Constitution.

The United States Supreme Court held in <u>Stongner v. California</u>, (2003) 123 S.Ct. 2446, "Ex Post Facto Clause prohibits the States from enacting laws with certain retroactive effects" When Laws inflict greater punishment, than the law annexed to the offense. An indeterminate term serves as a carrot and a stick. In California, one found to have committed second degree murder is to serve 15 years to life, assuming the verdict of second degree covers the minimum term of 15 years for the offense, then the "to life" is the carrot for rehabilitation. For California to create a law to allow finding one whose verdict of second degree murder to be denied parole because his crime was decided wrongly, and deny parole by finding the crime was really first degree murder clearly violates the constitution.

California Law requires parole, protected liberty interest in parole has been found, petitioner plead to the entitlement of parole and plead to each and every element of his offense, to allow the Governor to find petitioner committed a greater offense then his conviction evidences is contrary to United States

Supreme Court holdings in <u>Stonger</u>.

Further, in California, the Governor and the Board serves a function equivalent to that of a sentencing Judge in a Determinate Term Case, and is therefore bound by the same rules under <u>Cunningham v. California</u>, (2007) 2007 WL 135687.

The Board, as set forth in PC 3041(b) must set a parole release date, unless it finds the gravity of the offense or past offenses requires a lengthier sentence. The rules established for the Board to follow, mandates a date shall be set to a middle term under (CCR 15) §2403 matrix. Here, the Board abided by the law and set petitioner's term within the matrix, yet the Governor reversed by finding circumstances in aggravation which clearly violates <u>Cunningham</u>.

Therefore, the Governor's finding of aggravating facts that petitioner committed a greater degree of an offense then the petitioner's plea verdict evidences violate petitioner's sixth amendment right to a jury trial. For the Governor to deny parole by finding elements beyond the minimum necessary to sustain the conviction, is contrary to U.S. Supreme Court findings in <u>Cunningham</u>, supra, and <u>U.S. v. Gaudin</u>, 515 U.S. 506, 522-523 (1995) "A jury verdict that one is guilty of the crime means, of course, a verdict that one is guilty of each necessary element of the crime.

**GROUND FIVE:**

Denial of parole under California Governor's no-parole policy for murderers denied petitioner his due process right to be heard by an impartial decision maker <u>U.S.C.A. CONST.AMEND. 14</u>.

The flimsy nature of the evidence underlying the Governor's denial of parole and the facile, legally flawed argument with respect to petitioner's parole plans indicate another problem with the denial of parole in this case. A recent decision from the United States District Court for the Eastern District of California concluded that Governor Davis operated under a blanket no-parole policy for inmates, such as petitioner, serving sentences for murder <u>Martin</u>,

supra, 2006 WL 1344584, page 10-12 citing Coleman 96-0783 LKK PAN.

In the instant case, using the Maritn case as support, Governor's Davis reasoning behind his reversal of petitioner's parole grant is thin to the point of being pretextual. At best, the Governor gave petitioner's post-conviction accomplishments cursory attention; the conclusion, appears to have been preordained.

### CONCLUSION

While murderers represent the basest form of human behavior. California Laws provide for mechanisms by which even murderers are entitled to certain rights. The judiciary has an obligation to execute those laws.

Petitioner's case must be reviewed under the most recent rulings since the Governor reversed the Board's grant of parole in 2003. Those decision include: Ross 2007 DJDAR 3847 (iATT. A) granted review against the Governor, ordering reconsideration under, Elkins, supra, (2006) 144 Cal.App.4th 475; Lee, supra, (2006) 143 Cal.App.4th 1400; and Scott, supra, (2005) 133 Cal.App.4th 573; requiring the same consideration for petitioner.

The Governor's own record of petitioner's parole readiness does not establish that petitioner unreasonably poses a risk to public safety. Any contrary conclusion lacks evidentiary support. In the absence of any evidence in the record supporting the Board's decision, remanding this case for a new hearing is futile, the appropriate remedy is to grant the release of petitioner Saif'ullah 2005 WL 1555389 at *16; Rosenkrantz v. Marshall, 2006 WL 2327085; McQuillion v. Duncan, (2003) 342 F.3d 1012, 1015-1016; Lee, supra; and Elkins, supra.

I, Miguel Molina, declare the above true and correct under penalty of perjury.

Respectfully Submitted,                    Dated: APRIL 24, 2007

Miguel Molina

21